**E-FILED**
Thursday, 02 August, 2012  12:18:25 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **J.T.** by and through his mother **A.F.**, | ) | |
| | ) | |
| | ) | |
| v. | ) | 12-CV-3203 |
| | ) | Jury Demand |
| **JULIE HAMOS**, in her official | ) | |
| capacity as Director of the Illinois | ) | |
| Department of Healthcare and | ) | |
| Family Services. | ) | |

## COMPLAINT

**NOW COMES** Plaintiff by and through his attorney, Michelle N. Schneiderheinze and for his Complaint against Defendant states as follows:

### I. INTRODUCTION

1.      Plaintiff is a Medicaid-eligible child with a mental health disorder who needs intensive behavioral health services in order to correct or ameliorate his conditions.

2.      Plaintiff is entitled to receive these medically necessary services in the community under the Early and Periodic Screening, Diagnostic, and Treatment Services (EPSDT) provisions of Title XIX of the Social Security Act ("Medicaid Act") 42 U.S.C. § 1396 *et. seq* and under the Americans with Disabilities Act (ADA) and the Rehabilitation Act.

3.      Plaintiff should not be required to become institutionalized in order to receive medically necessary services to correct or ameliorate his conditions.

4.      Plaintiff has experienced unnecessary institutionalization and other serious harms as result of the Defendant's failure to provide or arrange for medically necessary, mental health/behavioral services required under the EPSDT provisions of the Medicaid Act.

5.      The denial of EPSDT services results in significant harm to children with behavioral or emotional disorders, including exacerbation of their conditions, deterioration to the point of crisis, and unnecessary institutionalization in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

6.      Defendant is well aware that children (up to the age of 21) with severe developmental disabilities, severe mental illnesses or severe emotional disorders fail to receive the medically necessary home and community-based services that the Federal law requires Illinois to provide to children who have behavioral or emotional disorders.

7.      In March, 2010, the Illinois Department of Human Services (DHS) issued a report to the Governor and the General Assembly which stated that during Fiscal Year 2009, the State identified 18,134 children and adolescents through the age of 21 with severe mental illnesses and severe emotional disturbances.

8.      Only 220 of these children with severe mental illnesses and emotional disturbances (MI/SED) received intensive community based services, with 145 children receiving services in their own home through the Individual Care Grant Program (ICG) and 75 children and adolescents receiving services in Child Group Homes. (See "Institutional Services for Children with Developmental Disabilities, Severe Mental Illness" at http://www.dhs.state.il.us/page.aspx?item=52428.)

9.      The DHS Community Services Act Report, dated January 1, 2009, noted that in Fiscal Year 2007, the Individual Care Grant program received 1,051 requests for applications for intensive community based services and in the same year only 81 grants were awarded.

10.     The Community Residential Service Authority ("CRSA") is an interagency group created by the State Legislature in 1985.

11.     CRSA is responsible for identifying and addressing barriers facing

parents, professionals and providers when trying to get needed services and programs

for individuals with a behavior disorder or a severe emotional disturbance and their

family.

12.     In its 2011 Annual Report, CRSA stated:

> Children who exhibit multiple impairments/disabilities, including
> behavior disorders or severe emotional disturbances, historically
> present challenges to Illinois' state service system as agencies and
> schools try to address the diverse service needs of this population.
> Many of these children do not clearly fit the service eligibility
> criteria or funding streams of state and local public agencies, and
> therefore, unacceptable numbers of children and families go un-
> served or are underserved by the very systems established to help
> them. It is this disconnect between service needs and service
> provision that provided the impetus for the creation of the
> Community and Residential Services Authority (CRSA).

(CRSA 2011 Annual Report at 1.)

13.     CRSA has recognized that the following are sub-populations of

children exhibiting severe emotional disturbance and behavior disorder who are

at significant risk of "falling between the cracks" of the child and adolescent

service system in Illinois:

- Children who need intensive clinical/behavioral interventions but who do
  not meet the state mental health criteria to qualify for funding of needed
  residential treatment.
- Children with cognitive impairments in combination with other
  disabilities.
- Families of adopted children in crisis.
- Children who need specialized treatment to address inappropriate sexual
  behavior.
- children with brain injuries.

(CRSA 2009 Annual Report at 8-9.)

14.     CRSA has reported that child and family teams and other service

planning networks often decide that a child requires treatment in an out-of-home/out-

of-community residential setting primarily because the needed community-based

services are either not available in the child's community, are not available at the level of intensity needed by the child and family or because coordination among community-based providers is weak or absent. (Id. at p. 11.)

15.     As a result of the Defendant's continued over reliance on institutions, hundreds of children with mental health, developmental, behavioral and emotional disorders cycle through hospitals, emergency rooms, acute care facilities, and residential treatment centers without obtaining any long-term relief.

16.     The State of Illinois' system of mental health care is so weak and uncoordinated that most children are released from facilities with little or ineffective follow-up community mental health care.

17.     The services offered by Illinois' community mental health centers after discharge from an institutional setting consists of little more than minimal medication management and outpatient counseling once a week for one hour, which is inadequate for a child with significant behavioral and emotional problems.

18.     Not surprisingly, many children and families find themselves thrown back into a crisis, forced to repeat the cycle of institutionalization yet again.

19.     Under the current system, the Defendant opts to fund children living with behavioral and emotional problems in hospitals and institutions, rather than providing the intensive, individualized care that allows children to remain in their homes and communities.

20.     SASS is a statutorily mandated partnership between the Illinois Department of Healthcare and Family Services (HFS) and the Illinois Department of Human Services (DHS). See 305 ILCS 5/5-5.23.

4

21.     SASS is a single, statewide system to serve children experiencing a mental health crisis whose care will require public funding featuring a single point of entry called the Crisis and Referral Entry Service ("CARES").

22.     Before a child can be admitted to an inpatient hospital for psychiatric services to be funded by Medicaid, a SASS screening must be conducted to determine "the appropriateness and availability of out-patient support services for necessary treatment." See 305 ILCS 5/5-5.23.

23.     All Medicaid eligible children are screened by SASS prior to admission to a psychiatric facility.

24.     Defendant is responsible for the implementation of the SASS program. See 305 ILCS 5/5-5.23 ("The Department of Healthcare and Family Services, by rule, shall require the screening and assessment of a child prior to any Medicaid-funded admission to an inpatient hospital for psychiatric services to be funded by Medicaid.").

25.     Defendant has refused to contract with qualified mental health professionals and providers that are willing and able to provide intensive behavioral supports and other mental health treatment in lesser restrictive settings to Medicaid eligible children. See generally "Questions & Answers Community Mental Health Centers" at http://hfs.illinois.gov/assets/092311_faq.pdf ("Community Mental Health Center (CMHC) sites will continue to be certified by the Illinois Department of Human Services or the Illinois Department of Children and Family Services, prior to enrolling with HFS."); "Becoming a Provider" at http://www.dhs.state.il.us/page.aspx?item=32255 ("In the event that resources become available for expanding the community mental health provider network, the Division of Mental Health will post such opportunities on the DHS/DMH website.").

26.     Plaintiff is a Medicaid-eligible person under the age of 21, who has an emotional disorder, but who is not being provided with the treatment required by federal law.

27.     As a Medicaid-eligible person under the age of 21, Plaintiff is entitled to receive Early and Periodic Screening, Diagnostic, and Treatment Services (EPSDT) which includes services necessary to correct or ameliorate mental health conditions. 42 U.S.C. §1396a(a)(43)(C); 42 U.S.C. § 1396d(a)(4)(B); 42 U.S.C. § 1396d(r)(5); 42 C.F.R. § 441.55.

28.     Despite widespread agreement among mental health experts that children with significant emotional or behavioral problems need intensive home and community-based services, Plaintiff has never received such services.

29.     Plaintiff has been segregated in a restrictive institutional setting and is at risk of institutionalization due to the lack of medically necessary community-based services.

30.     Plaintiff has been and is being harmed because he is not receiving medically necessary mental health/behavioral services and has been needlessly institutionalized or is at risk of needless institutionalization.

31.     Defendant's reliance on unnecessary institutionalization has caused or will continue to cause, serious, long term and irreversible harm to Plaintiff.

32.     Plaintiff seeks prospective injunctive relief ordering Defendant to comply with federal law mandates to provide Plaintiff medically necessary home and/or community-based services to treat or ameliorate his disorders.

33.     The violations set forth in this Complaint have been acknowledged by State legislatures, mental health professionals, and the Defendant, but little has been done to address the problem.

6

34.     Declaratory and injunctive relief is necessary to ensure that Plaintiff receives the treatment and services to which he is entitled by law.

35.     Due to the failure of Defendant to provide funding for community-based services, Plaintiff is seeking monetary damages against Defendant under the Rehabilitation Act as the result of the aggravation of his existing mental and emotional conditions due to the lack of funding for community based services.

## II. JURISDICTION & VENUE

36.     This is an action for declaratory and injunctive relief to enforce the rights of Plaintiff under the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) provisions of Title XIX of the Social Security Act ("Medicaid Act"); the Americans with Disabilities Act, 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). The Plaintiff's claim for monetary damages is authorized under 28 U.S.C. § 2201-02 and 42 U.S.C. §1983 and under the Rehabilitation Act.

37.     This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff's claims for declaratory and injunctive relief are authorized under 28 U.S.C. § 2201-02 and 42 U.S.C. § 1983. The Plaintiff's claim for monetary damages is authorized under 28 U.S.C. § 2201-02 and 42 U.S.C. §1983 and under the Rehabilitation Act.

38.     Venue is proper in the Central District of Illinois under 28 U.S.C. § 1391(b).

### III. PARTIES

*A. Plaintiff*

39.     Plaintiff, J.T. is a 13-year old boy suffering from Bipolar Disorder and Mild Mental Retardation.

40.     A.F. is J.T.'s biological mother.

41.     J.T. brings this action through his mother and next friend, A.F.

*B. Defendant Julie Hamos*

42.     Defendant, Julie Hamos, is the Director of the Illinois Department of Healthcare and Family Services (HFS) and is being sued in her official capacity.

### IV. CONSTITUTIONAL AND STATUTORY BACKGROUND

*A.     The Federal Medicaid Program/EPSDT*

43.     Medical Assistance, commonly known as Medicaid, is a joint federal and state funded program enacted to provide necessary medical assistance to needy aged or disabled persons and families with dependent children, whose income and resources are insufficient to meet the cost of care. 42 U.S.C. § 1396.

44.     States choosing to participate in the Medicaid program must operate the program in conformity with federal statutory and regulatory requirements. 42 U.S.C. § 1396a.

45.     Each State participating in the Medicaid program must submit a Medicaid plan to the Secretary of Health and Human Services (HHS) for approval.

46.     The State plan describes the administration of the program and identifies the services the State will provide to eligible beneficiaries. 42 U.S.C. § 1396.

47.     Each State must designate a single state agency to administer and/or supervise the administration of the state's Medicaid plan. 42 U.S.C. § 1396a(a)(5).

48.     In Illinois, the Department of Healthcare and Family Services (HFS) is the single state agency responsible for administering the Medicaid program.

49.     Federal law requires States to fully implement the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) program of Medicaid. 42 U.S.C. § 1396a(a)(43); 43 U.S.C. § 1396d(a)(4)(B); 42 U.S.C. § 1396d(r).

50.     The purpose of the ESPDT program is to ascertain children's physical and mental health conditions and ensure children receive needed services "to correct or ameliorate defects and physical and mental illnesses and conditions . . ." 42 U.S.C. § 1396d(r)(5).

51.     Under EPSDT, States are required to provide screening services to identify health and mental health conditions and illness. 42 U.S.C. § 1396d(r)(1).

52.     States must also provide needed diagnostic and treatment services to correct or ameliorate health or mental health conditions. 42 U.S.C. § 1396a(a)(43)(C); 42 U.S.C. § 1396d(r)(5).

53.     Needed services must be provided whether or not such services are included in the state plan. 42 U.S.C. § 1396d(r)(5); 42 C.F.R. § 441.56(c).

54.     EPSDT requires the State of Illinois to provide or arrange for the provision of covered EPSDT services. Subsection (B) of 42 U.S.C. §1396a(a)(43) states that a state plan must "provide for . . . providing or arranging for the provision of such screening services in all cases where they are requested[.]" 42 U.S.C. § 1396a(a)(43)(B).

55.     Subsection (C) states that a state plan for medical assistance must "provide for . . . arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services." 42 U.S.C. § 1396a(a)(43)(C).

56.     The ESPDT provisions obligates the State of Illinois to ensure that medically necessary services are available, accessible and provided, either by providing them directly or by arranging for them through "appropriate agencies, organizations, or individuals[.]" 42 U.S.C. § 1396a(a)(43).

57.     The State of Illinois has an obligation to ensure that all services required by the ESPDT provisions are being provided to Medicaid-eligible children effectively.

58.     Illinois has chosen to participate in the Medicaid program; and therefore must provide EPSDT services to eligible children under the age of 21.

59.     For children with significant emotional and behavioral disorders, intensive home and community-based services are medically necessary to treat and ameliorate their disorders.

60.     Intensive home and community-based services include, but are not limited to, crisis intervention, case coordination, psychiatric consultation, individual therapy, group therapy, family therapy, milieu therapy services, therapeutic stabilization services and behavior management intervention services.

61.     In some cases, intensive residential treatment services are required due to individuals exhibiting high levels of aggression and self-destructive behavior, requiring intensive behavioral intervention in a 24hour, seven days a week continuum of care.

62.     The State of Illinois does not make intensive home and community-based services available on a consistent, statewide basis for children for whom the services are medically necessary.

63.     In March, 2010, the State of Illinois through DHS acknowledged that of the identified 18,134 children and adolescents through the age of 21 with severe

10

mental illnesses and severe emotional disturbances, only 220 of these children received intensive community-based services.

B.  *The Americans with Disabilities Act and Section 504 of the Rehabilitation Act*

64.  Title II of the Americans with Disabilities Act prohibits public entities from discriminating against or excluding a qualified individual with a disability from participating in the benefits of services, programs, or activities of the public entity on the basis of disability, 42 U.S.C. § 12132; 28 C.F.R. § 35.130.

65.  The ADA requires public entities to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35,130(d).

66.  Public entities also must make reasonable modifications in policies, practices, or procedures when necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

67.  Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794, imposes identical requirements on State programs and activities that receive federal financial assistance.

68.  Defendant discriminates against the Plaintiff by failing to provide them services in the most integrated setting appropriate to their needs.

69.  An integrated setting is one that allows individuals to live in their home or a home-like setting with natural family supports and the opportunity to attend school and participate in their communities with non-disabled peers.

70.  Defendant offers only a negligible amount of intensive home and

community-based services to some children and not all children and have chosen instead to serve children in needlessly segregated settings.

71.     Hospitals and psychiatric residential treatment facilities are all restrictive settings that severely limit a child from interacting with his or her family, school, peers and community.

72.     Additionally, out-of-home placements exacerbate many children's behavioral and emotional problems by severing these important connections.

73.     By failing to provide adequate home based and community-based mental health/behavioral services, Defendant has and continues to discriminate against the Plaintiffs by unnecessarily segregating them in violation of the ADA and Section 504 of the Rehabilitation Act.

**V.     STATEMENT OF FACTS**

74.     Plaintiff, J.T. is a 13-year old boy with Bipolar Disorder-mixed type with psychotic features and mild mental retardation.

75.     J.T. has been psychiatrically hospitalized numerous times within the past year for severe agitation, and physical and verbal aggression.

76.     Prior to each psychiatric hospital admission, J.T. was screened by Defendant, through the SASS program; and Defendant, through the SASS program, determined that psychiatric hospitalization was the least restrictive setting available through Medicaid to provide J.T. with medically necessary psychiatric treatment.

77.     On July 10, 2012, Dr. Eddie Y. Ramirez recommended that J.T. receive comprehensive treatment at a residential facility.

78.     On July 12, 2012, the undersigned counsel forwarded Dr. Ramirez's recommendation to Defendant with a request that Defendant implement Dr. Ramirez's recommendations.

12

79.     J.T. has been unable to obtain the medically necessary services to treat and ameliorate his disorders as prescribed by Dr. Ramirez.

80.     On information and belief, between July 1, 2012 and July 18, 2012, J.T. was evaluated numerous times by SASS because of increased aggression, failure to take his medications, and elopement.

81.     On information and belief, between July 1, 2012 and July 18, 2012, after SASS screened J.T., SASS failed to arrange for and provide medically necessary treatment to J.T.

82.     On July 18, 2012, J.T. was placed in the Vermilion County Juvenile Detention Center for violating the conditions of his home confinement[1] by leaving his home.

83.     On July 28, 2012, while J.T. was in the Vermilion County Juvenile Detention Center, J.T. was evaluated for admission to Options, a Psychiatric Residential Treatment Facility (PRTF) in Indianapolis, Indiana.

84.     On July 30, 2012, J.T. was found to be an appropriate candidate for treatment in the Options program.

85.     Defendant has previously contracted with Options and/or its parent company (Acadia) to provide services to other Medicaid eligible children.

86.     If J.T. does not receive residential treatment to ameliorate his disorders he will be at risk for further hospitalization ("institutionalization").

87.     When J.T. is in the hospital, he is not able to attend school and cannot leave the hospital at all.

---

[1] J.T. was placed on home confinement after being charged with domestic battery. The victim of the domestic battery was J.T.'s mother, A.F.

88.     When J.T. is discharged from the hospital, outpatient services have been unsuccessful at maintaining a sufficiently supervised and therapeutic setting.

89.     J.T. needs residential treatment to treat and ameliorate his disorders.

90.     Unless J.T. receives residential treatment to treat and ameliorate his disorders he will likely be at risk for many future hospitalizations.

91.     J.T. is an individual with a disability.

92.     J.T. is a recipient of Medical Assistance, commonly known as Medicaid.

## VI. CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE EARLY AND PERIODIC SCREENING, DIAGNOSTIC AND TREATMENT (EPSDT) PROGRAM OF MEDICAID AND 42 U.S.C § 1983

93.     Plaintiff repeats and incorporates by reference as though fully set forth here the facts contained in paragraphs 1 through 92 above.

94.     In violation of the EPSDT provisions of the Medicaid Act, the Defendant, while acting under the color of law, has failed to provide the Plaintiff with medically necessary intensive home and community based services, community residential services, and/or residential mental health services when such services are medically necessary to treat or ameliorate their conditions. 42 U.S.C. § 1396a(a)(43), § 1396d(r).

95.     Defendant's failure to provide statutorily-mandated health services violates 42 U.S.C. § 1983 by depriving Plaintiff of his statutory rights under the Medicaid Act to receive medically necessary services.

### COUNT II
### VIOLATION OF AMERICAN WITH DISABILITIES ACT (ADA)AND 42 U.S.C § 1983

96.     Plaintiff repeats and incorporates by reference as though fully set forth here the facts contained in paragraphs 1 through 92 above.

14

97.     Title II of the American with Disabilities Act (ADA) provides that no qualified person with a disability shall be subjected to discrimination by a public entity. 42 U.S.C. § 12132.

98.     A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d).

99.     Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the ADA.

100.    Children with behavioral or emotional disorders are qualified individuals with disabilities within the meaning of the ADA.

101.    Plaintiff is a qualified individual with disabilities within the meaning of Title II of the ADA.

102.    The Illinois Department of Healthcare and Family Services of which Defendant Hamos is Director is a "public entity" within the meaning of Title II of the ADA.

103.    The actions by HFS constitute unlawful discrimination under 42 U.S.C. § 12132 and violate the integration mandate of the regulations implementing this statutory prohibitions. 28 C.F.R. § 35.130(d).

104.    Defendant discriminates against Plaintiff by failing to provide him services in the most integrated setting appropriate to his needs.

105.    An integrated setting is one that allows individuals to live in their home or a home-like setting with natural family supports and the opportunity to attend school and participate in their communities with nondisabled peers.

106.    Defendant offers only a negligible amount of intensive home and

15

community-based services to some children and not all children and have chosen instead to serve children in needlessly segregated settings.

107.    Psychiatric hospitals are restrictive settings that severely limit a child from interacting with his or her family, school, peers and community.

108.    Additionally, out-of-home placements exacerbate many children's behavioral and emotional problems by severing these important connections.

109.    By failing to provide adequate home based and community-based mental health/behavioral services, Defendant has and continues to discriminate against the Plaintiffs by unnecessarily segregating them in violation of the ADA.

110.    Plaintiff has no adequate remedy at law.

111.    Plaintiff is indigent and unable to post bond.

*COUNT III*
*VIOLATION OF REHABILITATION ACT AND 42 U.S.C § 1983*
*(DECLARATORY AND INJUNCTIVE RELIEF)*

112.    Plaintiff repeats and incorporate by reference as though fully set forth here the facts contained in paragraphs 1 through 92 above.

113.    The Rehabilitation Act, 29 U.S.C. Sec. 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability.

114.    The implementing regulation for the statute requires that public and federally-funded entities provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability." 28 C.F.R. § 41.51(d).

115.    Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the Rehabilitation Act.

116.    The Illinois Department of Healthcare and Family Services is a recipient of federal funds under the Rehabilitation Act.

117.    Children with behavioral or emotional disorders are otherwise qualified individuals with a disability within the meaning of the Rehabilitation Act.

118.    The Plaintiff is a qualified individuals with a disability under Section 504 of the Rehabilitation Act.

119.    The actions by HFS constitute unlawful discrimination under 29 U.S.C. § 794(a) and violate the integration mandate of the regulations implementing this statutory prohibition. 28 C.F.R. § 41.51(d).

120.    Defendant discriminates against Plaintiff by failing to provide him services in the most integrated setting appropriate to his needs.

121.    An integrated setting is one that allows individuals to live in their home or a home-like setting with natural family supports and the opportunity to attend school and participate in their communities with nondisabled peers.

122.    The Defendant offers only a negligible amount of intensive home and community-based services to some children and not all children and have chosen instead to serve children in needlessly segregated settings.

123.    Psychiatric hospitals are restrictive settings that severely limit a child from interacting with his or her family, school, peers and community.

124.    Additionally, out-of-home placements exacerbate many children's behavioral and emotional problems by severing these important connections.

125.    By failing to provide adequate home based and community-based mental health/behavioral services, Defendant has and continues to discriminate against Plaintiff by unnecessarily segregating them in violation of the Rehabilitation Act.

126.    Plaintiff has no adequate remedy at law.

17

127.   Plaintiff is indigent and unable to post bond.

128.   Plaintiff seeks declaratory and injunctive relief to redress the Defendant's violation of the Rehabilitation Act.

COUNT IV
VIOLATION OF REHABILITATION ACT AND 42 U.S.C § 1983
(MONETARY DAMAGES)

129.   Plaintiff repeats and incorporates by reference as though fully set forth here the facts contained in paragraphs 1 through 92 above.

130.   Defendant has intentionally discriminated against Plaintiff by establishing a system which requires him to become institutionalized (hospitalized) in order to receive or access intensive services to address his behavioral or emotional disorders, while other persons are able to access community based services without having to become institutionalized.

131.   Defendant has been "deliberately indifferent" to the need for community based services for Plaintiffs.

132.   Despite the demonstrated advantages of community-based programs, Defendant administers an antiquated system for serving people with behavioral or emotional disorders that relies heavily on hospitalizations in order to receive intensive services.

133.   Defendant has been deliberately indifferent to Plaintiff by failing to provide a reasonable modification or accommodation to the existing institutional funding for behavioral or emotional disorder services in order for the Plaintiff to receiving funding for community based services.

134.   It would not fundamentally alter the Defendant's programs, services, or activities to provide Plaintiffs with funding for services in the community.

135.    Providing institutional care to Plaintiffs in a hospital would be more costly than providing community-based funding to Plaintiffs in a residential setting.

136.    As a direct and proximate result of the Defendant's policies, practices and procedures, Plaintiff has been denied community based services which has caused emotional distress/mental anguish to him and resulted in additional hospitalizations.

137.    As a result of the acts and omissions of Defendant, Plaintiff has suffered and will suffer and continue to suffer mental and emotional deprivation, including but not limited to the aggravation of existing mental and emotional conditions.

138.    As a result of the acts and omissions of Defendant, Plaintiff has suffered and will suffer and continue to suffer physical, mental and emotional deprivation, including but not limited to the loss of opportunities to develop to his fullest potential, and aggravation of his existing physical, mental and emotional conditions.

139.    Plaintiff will continue to suffer such deprivations in the future absent relief from this Court.

140.    Plaintiff seeks monetary damages to redress the Defendant's violation of the Rehabilitation Act.

**VII. REQUEST FOR RELIEF**

WHEREFORE, the Plaintiff respectfully request that this Court:

(a)     Issue a Declaratory Judgment in favor of Plaintiff and declare unlawful the Defendant's failure to comply with the mandates of the Medicaid Act, the Americans with Disabilities Act and the Rehabilitation Act.

(b) Issue Preliminary and Permanent Injunctive relief enjoining Defendant from subjecting Plaintiff to practices that violates his rights under the Medicaid Act, the Americans with Disabilities Act and the Rehabilitation Act.

19

(c) Award monetary damages to Plaintiff under the Rehabilitation Act.

(d) Award Plaintiff the costs of this action, including reasonable attorneys fees.

(e) Award such other relief as the Court deems just and appropriate.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Respectfully submitted,

<u>*/s/ Michelle N.Schneiderheinze*</u>
Attorney for the Plaintiffs
Michelle N. Schneiderheinze
2401 E. Washington Street
Suite 200
Bloomington, IL 61704
(309)533-7340
(888)503-5730(fax)
michelle@mnslawoffice.com