IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **J.T.** by and through his mother **A.F.**, ) <br> ) <br> ) <br> v.    ) <br> ) <br> **JULIE HAMOS**, in her official ) <br> capacity as Director of the Illinois ) <br> Department of Healthcare and ) <br> Family Services, ) <br> **J.T.** by and through his mother **A.F.**, ) <br> ) | Jury Demand |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**NOW COMES** Plaintiff, by and through his attorney, Michelle N. Schneiderheinze and for his Memorandum in Support of Preliminary Injunction states as follows:

**I.     INTRODUCTION**

> The denial of EPSDT [Early and Periodic Screening, Diagnostic, and Treatment] services results in significant harm to children with behavioral or emotional disorders, including exacerbation of their conditions, deterioration to the point of crisis, and unnecessary institutionalization in violation of the ADA.

(Statement of Interest of the United States of America in <u>Troupe v. Barbour</u>, No. 3:10cv153 at 2, (S.D. Miss) (Doc. 41).) Plaintiff has a severe emotional disorder which has resulted in repeated psychiatrically hospitalizations. Due to the severity of Plaintiff's conditions and the constant rehospitalizations, his physician has found it medically necessary for him to be placed in a residential facility outside the family home. However, the Defendant has refused to provide

a funding mechanism for J.T. to obtain the residential treatment programs recommended by his doctors.

Without medically necessary intensive residential services, Plaintiff will be at risk for many more hospitalizations. Plaintiff seeks a Preliminary Injunction in order to receive the EPSDT services which he is entitled to under the law so that he can obtain medically necessary residential treatment and not repeatedly be forced to move to an institution (hospital). As shown below, the Plaintiff meets the standards for issuance of a preliminary injunction.

First, at the very least, Plaintiff has "some likelihood" of prevailing on his claims that the Defendant's refusal to provide and arrange for EPSDT mandated medically necessary services violates the Medicaid Act and violates Title II of the ADA and Section 504 of the rehabilitation Act. Plaintiff has a medical need for residential treatment, and he will suffer irreparable harm if he is unable to obtain these medically necessary services pending final judgment in this case because he will be forced to reside in an institution (hospital) to obtain treatment for his emotional disorder. Plaintiff has no adequate remedy at law to compensate him for having to move to an institution to receive medically necessary care, if a preliminary injunction is not entered against the Defendant.

**II. ARGUMENT**

   **A. Preliminary Injunction Standard.**

In <u>Abbott Laboratories v. Mead Johnson & Co.</u>, 971 F.2d 6,11 (7th Cir. 1992), the Court of Appeals set forth the standard for the issuance of a

preliminary injunction. As a "threshold matter" a party seeking emergency relief must demonstrate (1) "some likelihood of succeeding on the merits", and (2) that it has "'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." If the moving party can meet those prerequisites, the court is then to consider (3) the irreparable harm to the non-moving party if the relief is granted, balancing it against the irreparable harm to the moving party if the relief is denied and finally, (4) the public interest, "meaning the consequences of granting or denying the injunction to nonparties." <u>Promatek Industries, LTD v. Equitrac Corp.</u>, 300 F.3d 808, 811 (7th Cir. 2002). A "sliding scale approach is properly utilized so that the greater the balance of irreparable harm is to the moving party over the non-moving party, the less is the burden on the plaintiff to demonstrate probability of success on the merits." <u>Abbott Laboratories</u>, 971 F.2d at 12. As shown below, these standards are clearly met in this case.

**B. EPSDT Mandate.**

In <u>Collins v. Hamilton</u>, 349 F.3d 371,374 (7th Cir. 2003), the Circuit Court stated:

> The Medicaid Act was established to allows states to provide "medical assistance" to eligible individuals and families with insufficient income or resources to pay for necessary medical services. 42 U.S.C. Sec. 1396. A state's participation in the Medicaid program is completely voluntary. However, once a state elects to participate, it must abide by all federal requirements and standards as set forth in the Act. See <u>Wilder v. Va. Hosp. Ass'n</u>, 496 U.S. 498 (1990)...
>
> One such requirement is the creation of an "early and periodic screening, diagnostic, and treatment service," or EPSDT service, for categorically needy individuals under the age of twenty-one. 42

U.S.C. § 1396d(a)(4)(B). EPSDT services are mandated in Section 1396a(a)(10), which obligates states to provide the services listed in Section 1395d(a)(1 )-(5), (17) and (21). *Id.* Sec. 1396(a)(10). Within the ambit of EPSDT services for children, states are also required to furnish "such other necessary healthcare, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." *Id.* Sec. 1396d(r)(5). (emphasis added)

**C. State's Obligation To Arrange For Corrective Treatment.**

In Bond v. Stanton, 655 F.2d 766,770, (7th Cir. 1981), the Circuit Court stated:

[T]he defendants are not in compliance with the statutory [EPSDT] mandate to provide' such health care, treatment and other measures to correct or amerliorate defects and chronic conditions discovered [from the screening], as may be provided in regulations of the Secretary." 42 U.S.C. Sec. 1396d(a)(4)(B).

Pursuant to 45 C.F.R. Sec. 205.146(c)(iii)(1975), a state must:

arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is indicated by such screening services …

The EPSDT mandate is a "comprehensive child health program of prevention and treatment." Katie A. v. Los Angeles County, 481 F.3d 1150, 1154 (9th Cir. 2007); see also, Rosie D. v. Romney, 410 F.Supp.2d 18,25 (D. Mass 2007) ("as broad as the overall Medicaid umbrella is generally, the initiatives aimed at children are far more expansive").

One of the necessary services that must be provided to eligible children is found at section 1396d(a)(13), and states that a state plan must provide for:

other diagnostic, screening, preventative and rehabilitative services, including any medical or remedial services (provided in a

4

facility, home or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level.

**D. Plaintiffs are Likely To Prevail On Their Claim That Defendant's Actions Are In Violation Of EPSDT (Medicaid), The ADA And The Rehabilitation Act.**

There is no dispute that Plaintiff's emotional disorder has resulted in the State of Illinois paying for repeated hospitalization. The level of intensity of psychiatric hospital services stabilizes Plaintiff after a period of time, however, when he is discharged from the hospital and returned to the community, without adequate supports, he fails and the cycle of repeated hospitalizations occurs over and over.

The Defendant has paid for Plaintiff to receive extensive supports and services when delivered in the psychiatric hospital setting. The Defendant found that these hospitals delivered services were medically necessary, otherwise, they would not have made payment to the hospital. The Defendant's failure to approve funding for Plaintiff's medically necessary treatment in a community residential treatment center, threatens to force the Plaintiff into an institution (hospital) to obtain the care he needs. By virtue of these actions of forcing the Plaintiff into an institution instead of delivering the services in the community, the Defendant is in violation of Title II of the ADA and Section 504, along with violating the EPSDT mandate.

Title II of the ADA prohibits public entities from discriminating against persons with disabilities:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. Sec. 12132.

A "qualified individual with a disability" is a person who "with or without reasonable modifications to rules, policies or practices" meets the "essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. Sec. 12131(2). Similarly, Section 504 of the Rehabilitation Act prohibits recipients of federal funds from discriminating based on disability.

The Attorney General of the United States has promulgated regulations to implement both these statutory prohibitions. Under 28 C.F.R. Sec. 35.130(d), a public entity must administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. This regulation was based on the virtually identical regulation previously promulgated by the Attorney General to implement the Rehabilitation Act, 28 C.F.R. Sec. 41.51(d), known as the "integration mandate," requiring that recipients of federal funds administer their programs and activities in the "most integrated setting appropriate to the needs of qualified handicapped persons." Radaszewski v. Maram, 383 F.3d 599, 607 (7111 Cir. 2004). The above-described provisions of the ADA and the Rehabilitation Act, and these integration mandate regulations promulgated under them, are construed and applied in the same manner. Radaszewski v. Maram, 383 F.3d at 607.

6

In 1999, the United States Supreme Court addressed and interpreted the integration mandate in its landmark decision <u>Olmstead v. L.C.</u>, 527 U.S. 581 (1999). The Court affirmed that integration into community life was a central aspect of the legislation prohibiting discrimination against persons with disabilities. The <u>Olmstead</u> plaintiffs, who had developmental disabilities and mental illness, wished to live in the community, and treatment professionals agreed that community care was appropriate for them. Nevertheless, they were confined in Georgia's psychiatric hospitals due to limited funding for community care in the state budget. They claimed that Georgia's funding of institutional care, but not of community based care, violated the integration mandate of Title II of the ADA. The Supreme Court held that policies or practices imposing unjustified isolation of persons of disabilities in institutions are "properly regarded as discrimination based on disability." 527 U.S. at 597.

The Court in <u>Olmstead</u> set out the elements of a discrimination claim based on the integration mandate. The plaintiff must allege and ultimately show that (1) treating professionals have found that the person can handle and benefit from a community setting; (2) that the person wants to be in the community setting: and (3) that community-based services can be reasonably accommodated taking into account the resources of the state and the needs of others with comparable disabilities. 527 U.S. at 601-603. The public entity may defend by showing that a community setting cannot be accommodated without fundamental alteration to the entity's programs and services. 527 U.S. at 603.

7

It is very likely that Plaintiff will be able to show that these elements are met in this case. The Plaintiff wants to receive treatment in a residential treatment facility and not be hospitalized. The Plaintiff's request for community based residential services can reasonably be accommodated given that community based residential services are less costly than hospital delivered services. Accordingly, the Plaintiff has a substantial likelihood of success on the merits of his claims under the integration mandate of the ADA and the Rehabilitation Act.

### E. Plaintiff Has No Adequate Remedy At Law And Will Suffer Irreparable Harm If A Preliminary Injunction Does Not Issue.

A plaintiff has no adequate remedy at law when an award of damages at the end of trial will be "seriously deficient as a remedy for the harm suffered." Roland Machintery v. Dresser Industries, 749 F.2d 380, 386 (7th Cir. 1984). The requirement of irreparable harm is met when the moving party will suffer harm during the pendency of the case "that cannot be prevented or fully rectified by the final judgment after trial." 794 F.2d at 386. These elements are clearly present here. Plaintiff has no adequate remedy at law. Plaintiff will be forced to move to an institution (hospitalization) to receive services to treat his emotional disorder if an injunction does not issue which will result in the unjustified isolation of Plaintiff in an institution which the American with Disabilities Act (ADA) sought to remedy. The Supreme Court best summarized the harm which Plaintiff will likely suffer if they are placed in an institution to receive services which are being denied them in the community.

In Olmstead, 527 U.S. at 600-601, the Supreme Court stated:

8

> Recognition that unjustified institutional isolation of persons with disabilities is a form of discrimination reflects two evident judgments. First, institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life. Second, confinement in an institution severely diminishes the everyday activities of individuals including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment. Dissimilar treatment correspondingly exists in this key respect: In order to receive needed medical services, persons with ... disabilities must, because of those disabilities, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without [such] disabilities can receive the medical services they need without similar sacrifice.

If an injunction does not issue in this case and if the Plaintiff does not move into an institution, then the Plaintiff will face ongoing risk to his emotional and behavioral health. If the Plaintiff remains in the community without medically necessary services, then he will face ongoing risk to his emotional and behavioral health. Thus, he will suffer irreparable injury for which there is no adequate remedy at law.

**F. The Balance Of Equities Supports Entry Of A Preliminary Injunction In This Case.**

As has been shown, Plaintiff will suffer harm if an injunction does not issue. The Defendant, however, will only be required to do what they were willing and able to do if the Plaintiff is admitted to a psychiatric hospital. A temporary or preliminary payment of benefits to the Plaintiff will have no serious fiscal impact on the State, and any inconvenience is far outweighed by the harm to the Plaintiff if forced to move to an institution or face the risk of remaining at home with insufficient services to address his medical (behavioral) conditions.

### G. The Public Interest Favors The Issuance Of Interim Injunctive Relief.

The granting of a Preliminary Injunction would have no detrimental effect on the public. Based upon the showing the Plaintiff has made regarding the merits of this case, this Court should conclude that the public interest favors interim enforcement of the EPSDT mandate and the integration mandate of the ADA.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that this Court grant the Plaintiffs Motion Preliminary Injunction and Order that the Defendant, Julie Hamos, is enjoined from failing to take immediate and affirmative steps to arrange and fund Plaintiff's medically necessary residential treatment as required under the Early and Periodic Screening, Diagnostic, and Treatment Services (EPSDT) provisions of Title XIX of the Social Security Act ("Medicaid Act") 42. U.S.C. Sec. 1396 *et. seq.*

Respectfully submitted,

*/s/ Michelle N.Schneiderheinze*
Attorney for the Plaintiffs
Michelle N. Schneiderheinze
2401 E. Washington Street
Suite 200
Bloomington, IL 61704
(309)533-7340
(888)503-5730
michelle@mnslawoffice.com