IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **J.T.** by and through his mother **A.F.**, ) | |
| ) | |
| ) | |
| v.  ) | |
| ) | Jury Demand |
| **JULIE HAMOS**, in her official ) | |
| capacity as Director of the Illinois ) | |
| Department of Healthcare and ) | |
| Family Services, ) | |
| **J.T.** by and through his mother **A.F.**, ) | |
| ) | |

**PLAINTIFF J.T.'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER**

Now comes Plaintiff J.T. by and through his attorney, Michelle N. Schneiderheinze, and pursuant to Federal Rule of Civil Procedure 65, respectfully moves this Honorable Court for an Order requiring Defendant, Julie Hamos, to provide Medicaid coverage for placement in a residential treatment facility found to be "medically necessary" as required under the Early and Periodic Screening, Diagnostic, and Treatment Services (EPSDT) provisions of Title XIX of the Social Security Act ("Medicaid Act") 42. U.J.T. Sec. 1396 *et. seq.* In support of this motion, Plaintiff states as follows:

I. **Background**

A. **Collins v. Hamilton, 349 F.3d 371 (7th Cir. 2003)**

In Collins v. Hamilton, the Seventh Circuit found "that Indiana is required to fund the cost of placement in a [Psychiatric Residential Treatment Facility ("PRTF')] if it is deemed 'medically necessary' by an EPSDT screening." Id. at 376. In that case, the plaintiffs filed a class action complaint for injunctive and declaratory relief alleging the State of Indiana violated federal Medicaid law by failing to provide medically necessary residential psychiatric treatment for Medicaid-eligible children. See Collins

v. Hamilton, 231 F.Supp.2d 840, 841-42 (S.D. Ind. 2002). The district court agreed with the plaintiffs and issued a permanent injunction requiring the State of Indiana to provide Medicaid-eligible children under the age of 21 with PRTF placements found to be medically necessary by EPSDT screenings. Id. at 851.  The State of Indiana appealed arguing the district court's reading of the EPSDT provision of the Medicaid Act was overbroad.  See Collins v. Hamilton, 349 F.3d 371, 372 (7th Cir. 2003).  While affirming the district court, the Seventh Circuit found:

> The Medicaid Act was established to allow states to provide "medical assistance" to eligible individuals and families with insufficient income or resources to pay for necessary medical services. 42 U.J.T. § 1396. A state's participation in the Medicaid program is completely voluntary. However, once a state elects to participate, it must abide by all federal requirements and standards as set forth in the Act. See Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). The State of Indiana participates in the Medicaid program and is therefore bound by its requirements.
>
> One such requirement is the creation of an "early and periodic screening, diagnostic, and treatment service," or EPSDT service, for categorically needy individuals under the age of twenty-one. 42 U.J.T. § 1396d(a)(4)(B). EPSDT services are mandated by section 1396a(a)(10), which obligates states to provide the services listed in section 1396d(a)(1)-(5), (17) and (21). Id. § 1396a(a)(10). Within the ambit of EPSDT services for children, states are also required to furnish "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." Id. § 1396d(r)(5).
>
> Under subsection (a)(16), "inpatient psychiatric hospital services for individuals under age 21," are coverable Medicaid expenses so long as they abide by the directives of subsection (h). Id.§ 1396d(a)(16). The language in subsection (h) broadens the definition of "inpatient psychiatric hospitals" to include the services rendered in PRTFs by expressly incorporating other inpatient settings as specified by the Secretary in the promulgated regulations. Id. § 1396d(h)(1)(A) (covering services which "are provided in an institution (or a distinct part thereof) which is a psychiatric hospital as defined in section 1395x(f) of this title *or in another inpatient setting that the Secretary has specified in regulations*.") (emphasis added).[3] The Secretary has promulgated regulations that specifically include PRTFs as possible venues for patients under the age of twenty-one to receive psychiatric

> treatment. See 42 C.F.R. § 441.151(b).[4] The regulations elaborate on this requirement by defining a "Psychiatric Residential Treatment Facility" as "a facility other than a hospital, that provides psychiatric services [...] to individuals under age 21, in an inpatient setting." Id. § 483.352.[5] Under the language in the Act and the provisions in the regulations, we find that PRTFs qualify as "inpatient psychiatric hospitals," and therefore placement in a PRTF is included within the ambit of covered EPSDT services.

Id. at 374-75.

Illinois' current Medicaid plan, as it pertains to services for mentally ill children, is indistinguishable from the situation that existed in Indiana prior to the Collins v. Hamilton decision. The State of Illinois has an EPSDT Program called "Healthy Kids." See Ex. A; cf. Collins, 231 F.Supp.2d at 842 ("The State of Indiana has an Early and Periodic Screening, Diagnosis and Treatment Program ("EPSDT"), which it calls Health Watch.") Illinois Healthy Kids procedures dictate that children requiring mental health assessment be screened through the Screening, Assessment and Support Services ("SASS") Program. See Ex. A at 54. The SASS Program is a single, statewide system to serve children experiencing a mental health crisis whose care will require public funding featuring a single point of entry called the Crisis and Referral Entry Service ("CARES"). See Ex. B at 11,13. Before a child can be admitted to an inpatient hospital for psychiatric services to be funded by Medicaid, a SASS screening must be conducted to determine "the appropriateness and availability of out-patient support services for necessary treatment."  See 305 ILCS 5/5-5.23, Ex. B at 11, 26 ("A requirement of the Children's Mental Health Act of 2003 is to ensure the screening and assessment of children and adolescents prior to any admission to a hospital for inpatient psychiatric care for all children eligible for Healthcare and Family Services (HFS) Medical Programs."; "Hospitals are required to call CARES prior to each admission. . ."). Accordingly, all Medicaid eligible children are screened by SASS prior to admission to a psychiatric hospital. Id.

During a SASS screening, the SASS provider must determine whether outpatient mental health services can meet the immediate needs of the child. See Ex. B at 26. If outpatient supports are not sufficient, the SASS provider is responsible for coordinating an acute inpatient psychiatric hospitalization. Ex. B at 26-28. Illinois Medicaid does not fund inpatient psychiatric treatment except "to patients who are in need of short-term acute inpatient hospitalization." See Ex. C at 66; cf. Collins, 231 F.Supp.2d at 842 ("Although Indiana Medicaid will pay for acute care services, hospital services, and covered inpatient and outpatient mental health services, it will not pay for the cost of medically necessary residential placement for children.")

### B. Plaintiff J.T.

Plaintiff, J.T. is a 13-year old boy suffering from Bipolar Disorder and Mild Mental Retardation. He has been psychiatrically numerous times within the past year for severe agitation, and physical and verbal aggression. See Ex. D. Prior to each psychiatric hospital admission, J.T. was screened by Defendant, through the SASS program; and Defendant, through the SASS program, determined that psychiatric hospitalization was the least restrictive setting available through Medicaid to provide J.T. with medically necessary psychiatric treatment. On July 10, 2012, Dr. Eddie Y. Ramirez recommended that J.T. receive comprehensive treatment at a residential facility. See id. On July 12, 2012, the undersigned counsel forwarded Dr. Ramirez's recommendation to Defendant with a request that Defendant implement Dr. Ramirez's recommendations. See Ex. E.

Between July 1, 2012 and July 18, 2012, J.T. was evaluated numerous times by SASS because of increased aggression, failure to take his medications, and elopement. Between July 1, 2012 and July 18, 2012, after SASS screened J.T., SASS failed to arrange for and provide medically necessary treatment to J.T. On July 18,

2012, J.T. was placed in the Vermilion County Juvenile Detention Center for violating the conditions of his home confinement[1] by leaving his home.  On July 28, 2012, while J.T. was in the Vermilion County Juvenile Detention Center, J.T. was evaluated for admission to Options, a Psychiatric Residential Treatment Facility (PRTF) in Indianapolis, Indiana. On July 30, 2012, J.T. was found to be an appropriate candidate for treatment in the Options program. Defendant has previously contracted with Options and/or its parent company (Acadia) to provide services to other Medicaid eligible children. See Ex. F.

### II.     Legal Standard

As a "threshold matter" a party seeking emergency relief must demonstrate (1) "some likelihood of succeeding on the merits", and (2) that it has "'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6,11 (7th Cir. 1992). If the moving party can meet those prerequisites, the court is then to consider (3) the irreparable harm to the non-moving party if the relief is granted, balancing it against the irreparable harm to the moving party if the relief is denied and finally, (4) the public interest, "meaning the consequences of granting or denying the injunction to nonparties." Promatek Industries, LTD v. Equitrac Corp., 300 F.3d 808, 811 (7th Cir. 2002). A "sliding scale approach is properly utilized so that the greater the balance of irreparable harm is to the moving party over the non-moving party, the less is the burden on the plaintiff to demonstrate probability of success on the merits." Abbott Laboratories, 971 F.2d at 12. These standards are clearly met in this case.

---

[1] J.T. was placed on home confinement after being charged with domestic battery. The victim of the domestic battery was J.T.'s mother, A.F.

### III.     Analysis

#### A. Plaintiff is Likely To Prevail On Their Claim That Defendant's Actions Are In Violation Of the Medicaid EPSDT Mandate

As discussed above, the Seventh Circuit has already determined that states like Illinois are "required to fund the cost of placement in a PRTF if it is deemed 'medically necessary' by an EPSDT screening." See Collins v. Hamilton, 349 F.3d 371, 76 (7th Cir. 2003). In Bond v. Stanton, 655 F.2d 766,770, (7th Cir. 1981), the Circuit Court stated:

> [T]he defendants are not in compliance with the statutory [EPSDT] mandate to provide' such health care, treatment and other measures to correct or amerliorate defects and chronic conditions discovered [from the screening], as may be provided in regulations of the Secretary." 42 U.J.T. Sec. 1396d(a)(4)(B).

Pursuant to 45 C.F.R. Sec. 205.146(c)(iii)(1975), a state must:

> arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is indicated by such screening services …

The EPSDT mandate is a "comprehensive child health program of prevention and treatment." Katie A. v. Los Angeles County, 481 F.3d 1150, 1154 (9th Cir. 2007); see also, Rosie D. v. Romney, 410 F.Supp.2d 18,25 (D. Mass 2007) ("as broad as the overall Medicaid umbrella is generally, the initiatives aimed at children are far more expansive"). One of the necessary services that must be provided to eligible children is found at section 1396d(a)(13), and states that a state plan must provide for:

> other diagnostic, screening, preventative and rehabilitative services, including any medical or remedial services (provided in a facility, home or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level.

In summary, when placement in a residential facility is medically necessary, it must be provided under the EPSDT mandate. In this case, Plaintiff

has demonstrated a medical necessity for a residential placement as shown by his physician's recommendation. Yet, Defendant has refused to arrange for Plaintiff's medically necessary treatment in violation of the EPSDT mandate.

### B. Plaintiff Has No Adequate Remedy At Law And Will Suffer Irreparable Harm If An Injunction Does Not Issue.

A plaintiff has no adequate remedy at law when an award of damages at the end of trial will be "seriously deficient as a remedy for the harm suffered." Roland Machintery v. Dresser Industries, 749 F.2d 380, 386 (7th Cir. 1984). The requirement of irreparable harm is met when the moving party will suffer harm during the pendency of the case "that cannot be prevented or fully rectified by the final judgment after trial." 794 F.2d at 386.

"There is a distinction between the acute care available in a psychiatric hospital setting and the less restrictive treatment provided by a residential facility." Collins v. Hamilton, 349 F.3d 371, 376 (7th Cir. 2003) citing, Medicaid Program, 66 Fed.Reg. 7148 (Jan. 22, 2001). Treatment in a residential treatment facility is far less restrictive than psychiatric hospitalization. Psychiatric hospitals are locked facilities. Many residential treatment centers are not. Children can attend school and other community events while in a residential treatment facility. They cannot while in a hospital. Id. ¶ 88. A hospital is an institution because the patient cannot leave the facility. A residential treatment center is not because it allows an individual to participate in community activities while receiving intensive inpatient treatment.

Denying Plaintiff preliminary relief in this case will cause a seriously deficient remedy. If preliminary relief is denied, Plaintiff will be forced to spend an enormous amount of time in a psychiatric institution (hospitals) to receive services to treat their emotional, behavioral and developmental disorders. This has already led to unjustified

isolation of the Plaintiff which the American with Disabilities Act (ADA) sought to remedy. The Supreme Court best summarized the harm which Plaintiff will likely suffer if she is placed in an institution to receive services which are being denied them in the community. In <u>Olmstead</u>, 527 U.S. at 600-601, the Supreme Court stated:

> Recognition that unjustified institutional isolation of persons with disabilities is a form of discrimination reflects two evident judgments. First, institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life. Second, confinement in an institution severely diminishes the everyday activities of individuals including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment. Dissimilar treatment correspondingly exists in this key respect: In order to receive needed medical services, persons with … disabilities must, because of those disabilities, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without [such] disabilities can receive the medical services they need without similar sacrifice.

If an injunction does not issue in this case and if Plaintiff returns home without medically necessary services, he will face ongoing risk to their emotional and behavioral health. Thus, he will suffer irreparable injury for which there is no adequate remedy at law.

### C. The Balance Of Equities Supports Entry Of An Injunction In This Case.

As has been shown, Plaintiff will suffer harm if an injunction does not issue. The Defendant, however, will only be required to do what they were willing and able to do if the Plaintiff is admitted to a psychiatric hospital. A temporary or preliminary payment of benefits to the Plaintiff will have no serious fiscal impact on the State, and any inconvenience is far outweighed by the harm to the Plaintiff if forced to move to an institution or face the risk of remaining at home with insufficient services to address his medical (behavioral) conditions.

### D. The Public Interest Favors The Issuance Of Temporary Injunctive Relief.

The granting of a Temporary Injunction would have no detrimental effect on the public. Based upon the showing the Plaintiff has made regarding the merits of this case, this Court should conclude that the public interest favors interim enforcement of the EPSDT mandate.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that this Court grant Plaintiff J.T.'s Motion for Temporary Restraining Order and Order that the Defendant, Julie Hamos, is enjoined from failing to take immediate and affirmative steps to arrange and fund Plaintiffs medically necessary residential treatment as required under the Early and Periodic Screening, Diagnostic, and Treatment Services (EPSDT) provisions of Title XIX of the Social Security Act ("Medicaid Act") 42. U.J.T. Sec. 1396 *et. seq.*

Respectfully submitted,

*/s/ Michelle N.Schneiderheinze*
Attorney for the Plaintiffs
Michelle N. Schneiderheinze
2401 E. Washington Street
Suite 200
Bloomington, IL 61704
(309)533-7340
(888)503-5730(fax)
michelle@mnslawoffice.com