E-FILED
Friday, 05 October, 2012  04:23:04 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| J.T.,  by and through his mother A.F., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12-cv-03203 |
| ) | |
| JULIE HAMOS, in her official capacity) | |
| as Director of the Illinois Department ) | |
| of Healthcare and Family Services, ) | |
| ) | |
| Defendant. ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter comes before the Court on the Motion to Dismiss

Counts II, III, and IV of the Complaint (d/e 10) filed by Defendant Julie

Hamos.  For the reasons that follow, the Motion is GRANTED IN PART

and DENIED IN PART.

## I. FACTUAL BACKGROUND

On August 2, 2012, J.T., by and through his mother A.F.[1], filed a

---

[1] For purposes of clarity, the Court will refer to J.T. by his initials and will refer
to A.F. as Plaintiff.

four-count Complaint (d/e 1) against Defendant, Julie Hamos, in her

official capacity as Director of the Illinois Department of Healthcare and

Family Services.  The Complaint contains four counts.  Plaintiff seeks

injunctive and declaratory relief in the first three counts: (1) Count I, a

violation of the Early and Periodic Screening, Diagnostic, and Treatment

(EPSDTP) program of Medicaid and 42 U.S.C. § 1983; (2) Count II, a

violation of the Americans with Disabilities Act (ADA) and 42 U.S.C. §

1983; (3) Count III, a violation of the Rehabilitation Act and 42 U.S.C. §

1983.  Plaintiff seeks money damages in Count IV, which is identified as

a claim for a violation of the Rehabilitation Act and 42 U.S.C. § 1983.

According to the Complaint, J.T., is a Medicaid-eligible, 13-year-old

boy who suffers from Bipolar Disorder (mixed type with psychotic

features) and Mild Mental Retardation.  Cmplt. ¶¶ 1, 26, 39, 74, 92.  J.T.

has been psychiatrically hospitalized numerous times within the past year

for severe agitation and physical and verbal aggression.  Cmplt. ¶ 75.

Prior to each psychiatric hospital admission, J.T. was screened by

Defendant, through the Screening, Assessment and Support Services

program (SASS) and Defendant determined that psychiatric

hospitalization was the least restrictive setting available through

Medicaid to provide J.T. with medically necessary psychiatric treatment.

Cmplt. ¶ 76.

On July 10, 2012, Dr. Eddie Y. Ramirez recommended that J.T.

receive comprehensive treatment at a residential facility.  Cmplt. ¶ 77.

On July 12, 2012, legal counsel for J.T. forwarded Dr. Ramirez's

recommendation to Defendant with a request that Defendant implement

Dr. Ramirez's recommendations.  Cmplt. ¶ 78.  However, J.T. has been

unable to obtain the medically necessary services to treat and ameliorate

his disorders as prescribed by Dr. Ramirez.  Cmplt. ¶ 79.  Plaintiff further

alleges, on information and belief, that between July 1, 2012 and July 18,

2012, J.T. was evaluated numerous times by SASS but SASS failed to

arrange for and provide medically necessary treatment to J.T.  Cmplt. ¶

81.

On July 18, 2012, J.T. was placed in the Vermilion County Juvenile

Detention Center for violating the conditions of his home confinement.

Cmplt. ¶ 82.  J.T. was placed on home confinement after being charged with domestic battery of Plaintiff.  Cmplt. ¶ 82, n. 1.  On July 28, 2012, while in the Vermilion County Juvenile Detention Center, J.T. was evaluated for admission to Options, a psychiatric residential treatment facility in Indianapolis, Indiana.  Cmplt. ¶ 83.  On July 30, 2012, J.T. was found to be an appropriate candidate for treatment in the Options program.  Cmplt. ¶ 84.

Plaintiff alleges that if J.T. does not receive residential treatment, he will be at risk for further hospitalization/institutionalization.  Cmplt. ¶ 86.  When J.T. is in the hospital, he is unable to attend school or leave the hospital at all.  Cmplt. ¶ 87.  Moreover, "[w]hen J.T. is discharged from the hospital, outpatient services have been unsuccessful at maintaining a sufficiently supervised and therapeutic setting."  Cmplt. ¶ 88.  Plaintiff alleges J.T. "needs residential treatment to treat and ameliorate his disorders."  Cmplt. ¶ 89.

In Count I of the Complaint, Plaintiff alleges Defendant is violating the federal Medicaid Act, 42 U.S.C. § 1396 et seq., because Defendant

has failed and continues to fail to provide J.T. with "medically necessary intensive home and community based services, community residential services, and/or residential mental health services" that Defendant is mandated to provide under the EPSDT program provisions of the Medicaid Act.  Cmplt. ¶ 94.  Plaintiff also alleges in Count I that the failure to provide statutorily-mandated services violates 42 U.S.C. § 1983.  Cmplt. ¶ 95.

In Count II, Plaintiff alleges a violation of Title II of the  ADA and a violation of 42 U.S.C. § 1983.  Specifically, Plaintiff alleges that J.T. is a qualified individual with a disability, the Illinois Department of Healthcare and Family Services is a public entity, and that Defendant discriminates against J.T. by failing to provide him services in the most integrated setting appropriate to his needs.  Cmplt. ¶¶ 101, 102, 104. Plaintiff further alleges that "[b]y failing to provide adequate home based and community-based mental health/behavioral services, Defendant has and continues to discriminate against the Plaintiffs by unnecessarily segregating them in violation of the ADA."  Cmplt. ¶ 109.

In Count III, Plaintiff alleges a violation of the Rehabilitation Act and a violation of 42 U.S.C. § 1983.  Plaintiff alleges that J.T. is a qualified individual with a disability under Section 504 of the Rehabilitation Act.  Cmplt. ¶ 118.  Plaintiff alleges that Defendant discriminates against J.T. by failing to provide him services in the most integrated setting appropriate to his needs.  Cmplt. ¶ 120.  Plaintiff also alleges that the Illinois Department of Healthcare and Family Services is a recipient of federal funds under the Rehabilitation Act.  Cmplt. ¶ 116.

Finally, in Count IV, Plaintiff alleges Defendant has intentionally discriminated against J.T. by "establishing a system which requires him to become institutionalized (hospitalized) in order to receive or access intensive services to address his behavioral or emotional disorders, while other persons are able to access community based services without having to become institutionalized."  Cmplt. ¶ 130.  Plaintiff further alleges that Defendant's actions constitute deliberate indifference because Defendant continues to administer a system that relies heavily on hospitalization despite the demonstrated advantages of community-based programs.

Cmplt. ¶ 132.

Plaintiff seeks a declaratory judgment declaring as unlawful

Defendant's failure to comply with the mandates of the Medicaid Act,

ADA, and Rehabilitation Act and a permanent injunction enjoining

Defendant from subjecting J.T. to practices that violate his rights under

the Medicaid Act, ADA, and Rehabilitation Act.  The prayer for relief

also seeks money damages under the Rehabilitation Act, costs, and

reasonable attorney fees.

## II. PROCEDURAL BACKGROUND

On August 2, 2012, Plaintiff filed the Complaint, Motion for

Preliminary Injunction (d/e 2), and Motion for Temporary Restraining

Order (d/e 4).  On August 7, 2012, this Court entered an Agreed Order

(d/e 8) providing that:

> 1.  Defendant will seek to procure a contract, in
> accordance with applicable State laws, policies and
> procedures, for appropriate treatment and
> placement at a Psychiatric Residential Treatment
> Facility for Plaintiff J.T.;
>
> 2.  Plaintiff shall comply and cooperate with the
> Department of Healthcare and Family Services'

procedures and requests for information;

3.  This Order shall be in effect until further order
of the Court.

On September 14, 2012, Defendant filed an Answer to Count 1
(d/e12) and the Motion to Dismiss Counts II, III, and IV which is at
issue herein.

## III. JURISDICTION AND VENUE

Federal subject matter jurisdiction over Counts I through IV exists
pursuant to 28 U.S.C. § 1331, as each count asserts a claim that arises
under federal law.  Venue is proper because Defendant is located in
Springfield, Illinois, which is in this judicial district, and a substantial
part of the events giving rise to Plaintiff's claims occurred in this judicial
district.  See 28 U.S.C. § 1391(b)(1), (b)(2).

## IV. LEGAL STANDARD

A motion to dismiss under Federal Rule Civil Procedure 12(b)(6)
permits dismissal of a complaint for "failure to state a claim upon which
relief can be granted."  Fed.R.Civ.P. 12(b)(6).  For purposes of the
motion, a court must accept as true all well-pleaded allegations contained

in the complaint and draw all inferences in the light most favorable to the non-moving party.  Estate of Davis v. Wells Fargo Bank, 633 F.3d 529, 533 (7th Cir. 2011).  To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a).  That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis.  Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level."  EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007).  Conclusory allegations are "not entitled to be assumed true."  Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009) (citing Twombly, 550 U.S. at 544-55).

# V. ANALYSIS

Defendant seeks to dismiss Counts II, III, and IV.

A.   <u>Count II States a Claim Under the ADA</u>

Plaintiff brings Count II pursuant to Title II, the public services portion of the ADA and § 1983.  The relevant statutory provision provides as follows:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  The regulations pertaining to Title II require a public entity to "administer services, programs, and activities in the most integrated setting appropriate to the needs of the qualified individual with a disability."  28 C.F.R. § 35.130(d).

In <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581, 597-98 (1999), the United States Supreme Court held that "[u]njustified isolation . . . is properly regarded as discrimination based on disability."  The Court

recognized that institutionalizing individuals who could "handle and benefit from community settings" is stigmatizing and diminishes the life of those individuals.  Id. at 600-01.  The Court found that a State is obligated to place persons with mental disabilities in community placements rather than in institutions where (1) "the State's treatment professionals have determined that community placement is appropriate;" (2) "the transfer from institutional care to a less restrictive setting is not opposed by the affected individual;" and (3) "the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." Id. at 587.

Defendant argues this Court should dismiss Count II because, although Plaintiff complains that Defendant violated the integration mandate by failing to provide J.T. with "services in an integrated setting 'appropriate to his needs,'" Plaintiff actually wants J.T. to be placed in an institution (a psychiatric residential treatment facility).  Def. Mem., p. 5. Defendant contends "[i]t is far from clear why plaintiff asserts that failing

to place J.T. in the residential placement that she desires for J.T. violates the integration mandate of the ADA."  Def. Mem. p. 6.

Plaintiff denies that the allegations suggest J.T. seeks to be institutionalized.  Pl. Resp., p. 5.  Plaintiff responds that she has stated a claim because J.T. requests "treatment in a community based residential treatment setting where he can attend school and participate in other community activities."  Pl. Resp., p. 5.  Plaintiff asserts J.T. can attend school or participate in community activities when he is in a residential treatment setting but cannot when he is in the hospital.  Pl. Resp., p. 5. At present, the only way J.T.'s needs can be met is in a psychiatric hospital because Illinois Medicaid does not cover psychiatric residential treatment.  Pl. Resp., p. 2, 5.  However, J.T. does not want to live in a hospital and costs nearly three times as much as residential treatment. Pl. Resp., p. 5.  Finally, Plaintiff notes that the Seventh Circuit has recognized that residential treatment facilities are less restrictive than psychiatric hospitals.  See Collins v. Hamilton, 349 F.3d 371, 376 (7th Cir. 2003) (rejecting the argument that services offered through inpatient

psychiatric hospitals removed the need for residential treatment).

The allegations in Plaintiff's Complaint are unclear in light of some of the allegations and terminology.  Plaintiff alleges that "Illinois does not make intensive home and community-based services available on a consistent, statewide basis for children for whom the services are medically necessary."  Cmplt. ¶ 62.  Plaintiff describes hospitals and psychiatric residential treatment facilities as "restrictive settings that severely limit a child from interacting with his or her family, school, peers, and community."  Cmplt. ¶ 71.  Yet, Plaintiff seeks treatment for J.T. in a psychiatric residential treatment facility.  Cmplt. ¶ 83.

Nonetheless, construing the factual allegations in the light most favorable to Plaintiff, the Court construes Plaintiff's Complaint as seeking a less-restrictive placement for J.T. (psychiatric residential treatment facility) than an institution (hospital).  The Seventh Circuit has found, in the context of a placement in a psychiatric residential treatment facility, a "distinction between the acute care available in a psychiatric hospital setting and the less restrictive treatment provided by

a residential facility." Collins, 349 F.3d at 376.

In addition, Plaintiff alleges all of the elements of an integration mandate violation as is required by Olmstead.  Plaintiff alleges that a placement in a setting less restrictive than a hospital is appropriate for J.T., that J.T. wants to be placed in a less-restrictive setting, and that J.T.'s request for less-restrictive setting can be reasonably accommodated taking into account the resources available to the State.  See Cmplt. ¶¶ 77, 86, 87, 89, 107, 135.  Therefore, Count II states a claim under the ADA.

B.     Count III States a Claim Under Section 504 of the Rehabilitation Act

In Count III, Plaintiff alleges a violation of the Rehabilitation Act and § 1983.  The Rehabilitation Act prohibits public entities and recipients of federal funds from discriminating against any individual on the basis of disability:

> No otherwise qualified individual with a disability
> in the United States, as defined in section 705(20)
> of this title, shall, solely by reason of her or his
> disability, be excluded from the participation in,
> be denied the benefits of, or be subjected to

> discrimination under any program or activity
> receiving Federal financial assistance or under any
> program or activity conducted by any Executive
> agency or by the United States Postal Service.

29 U.S.C. § 794. A prima facie case under Section 504 of the
Rehabilitation Act requires a plaintiff allege the following four elements:
(1) that he is a handicapped individual under the Act; (2) that he is
"otherwise qualified" for the benefit sought; (3) that he was
discriminated against solely by reason of his handicap; and (4) that the
program in question receives federal financial assistance. Grzan v.
Charter Hospital of Northwest Indiana, 104 F.3d 116, 119 (7th Cir.
1997) (quotations and citations omitted).

Defendant first seeks to dismiss Count III on the same basis raised
in Count II–that Plaintiff has not stated a claim because J.T. seeks
placement in an institution. The Court will not dismiss Count III on this
basis either.

Defendant next seeks to dismiss Count III on the basis that no
cause of action is stated under the Rehabilitation Act because Plaintiff
must allege that J.T. is "otherwise qualified" for the benefit sought.

According to Defendant, J.T. is not "otherwise qualified" because, absent the handicap, he would not have been eligible for the Medicaid program at issue.  Def. Mem., p. 7.

In support thereof, Defendant cites <u>Grzan</u>, 104 F.3d 116.  In <u>Grzan</u>, the Seventh Circuit found that the psychiatric plaintiff who complained about her counselor's sexual relationship with her was not "otherwise qualified" under the Rehabilitation Act because "[h]ad she not suffered from a psychiatric condition, she would not have qualified for Charter's program and would not have been treated, negligently or otherwise." <u>Id.</u> at 120-121.

However, <u>Grzan</u> is distinguishable.  Unlike the plaintiff in <u>Grzan</u> who complained about the medical treatment she received, Plaintiff herein is complaining that J.T. is being denied treatment in an integrated setting.  Plaintiff alleges J.T. has been discriminated against by being denied community mental health services and forced to receive medically necessary treatment in an institutional setting.

As noted above, the United States Supreme Court held in <u>Olmstead</u>

that unjustified isolation constitutes discrimination under the ADA.  This

holding has been extended to the Rehabilitation Act, which is generally

construed as coextensive with the ADA and which also contains an

integration provision.  <u>See</u>  28 C.F.R. § 41.51(d) (requiring "the most

integrated setting appropriate to the needs of qualified handicapped

persons"); <u>Washington v. Indiana High Sch. Athletic Ass'n, Inc.</u>, 181

F.3d 840,845-46 n. 6 (7th Cir. 1999) (ADA and Rehabilitation Act are

"nearly identical" and "precedent under one statute typically applies to

the other.")[2]

Specifically, the Seventh Circuit held, in <u>Radaszewski v. Maram</u>,

383 F.3d 599 (7th Cir. 2004), that the plaintiff stated a claim under the

ADA and Rehabilitation Act where she alleged that Illinois' failure to

fund private-duty nursing care (community-based care) constituted

discrimination.  Specifically, the Seventh Circuit found that the plaintiff

had sufficiently alleged the three elements set forth in <u>Olmstead</u>: the

---

[2] "The chief difference between the two statutes is that the Rehabilitation Act
applies only to entities receiving federal funding . . . . [and] the Rehabilitation Act
requires that the exclusion be <u>solely</u> by reason of disability, while the ADA requires
only that the exclusion be by reason of the disability."  <u>Washington</u>, 181 F.3d at 845
n. 5.  (Emphasis in original.)

plaintiff alleged (1) private-duty nursing care was appropriate care; (2)

the disabled individual and his family agreed to such care; and (3) the

State could reasonably accommodate the care for the disabled individual.

Radaszewski, 383 F.3d at 607, 612-13 (wherein the analysis focused on

the ADA but the Court held that it applied "with equal force" to the

Rehabilitation Act claim); see also Grooms v. Maram, 563 F. Supp. 2d

840, 855 (N.D. Ill. 2008) (finding that the plaintiff "may bring a claim

for violation of the integration mandate if he satisfies the three factors set

forth in Olmstead and Radaszewski"); B.N. v. Murphy, 2011 WL

5838976, at *6 (N.D. Ind. 2011) ("[i]n a case involving the potential for

forced institutionalization, this court must apply the Olmstead court's

analysis to the integration mandate under the ADA and R[ehabilitation]

A[ct]").

Here, Plaintiff has alleged that a placement in a setting less

restrictive than a hospital is appropriate for J.T., that J.T. wants to be

placed in a less-restrictive setting than an hospital/institution, and that

J.T.'s request for less-restrictive setting can be reasonably accommodated

taking into account the resources available to the State.  See Cmplt. ¶¶ 77, 86, 87, 89, 107, 135.  As such, Plaintiff states a cause of action under the Rehabilitation Act.

Finally, with regard to Count III, Defendant asserts that Plaintiff cannot rely on § 1983 to sue Hamos in her official capacity for violations of the Rehabilitation Act.[3]

"In order to seek redress through § 1983, . . . a plaintiff must assert a violation of a federal right, not merely a violation of federal law." Blessing v. Freestone, 520 U.S. 329, 340 (1997) (emphasis in original). Whether a statutory provision creates a federal right depends on whether (1) Congress intended that the provision in question benefit the plaintiff; (2) the right is not so "'vague and amorphous' that its enforcement would strain judicial competence"; and (3) the statute unambiguously imposes a binding obligation on the State.  Id. at 340-41; see also Bontrager v. Indiana Family & Social Servs. Admin., No. 11-3710, 2012 WL

---

[3] Defendant does not raise in her Motion a claim that Plaintiff cannot rely on § 1983 to sue Hamos in her official capacity for violations of the ADA, although she does cite a case holding that § 1983 claims may not rest on the ADA.  See Def. Mem., p. 8, citing Torrence v. Advanced Home Care Inc., 209 WL 1444448 (N.D. Ill. 2009).

4372524, at *2, ___ F.3d ____ (7th Cir. 2012).  If the federal statute creates an individual right, the Court must determine if Congress foreclosed a remedy under § 1983 either expressly or implicitly, "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Blessing, 520 U.S. at 341.

In her Motion to Dismiss, Defendant does not discuss whether the Rehabilitation Act creates an individual right or contains a comprehensive enforcement scheme but cites two Northern District of Illinois cases for the proposition that, in this Circuit, a plaintiff cannot employ § 1983 to sue for violations of the Rehabilitation Act.  However, the law in this Circuit is mixed.  See Zachary M. v. Board of Educ. of Evanston Twp. High Sch. Dist. No. 202, 820 F. Supp. 2d 649, 662-63 (N.D. Ill. 2011) (noting conflict in the district courts whether a § 1983 action under the Rehabilitation Act is cognizable).  This Court would prefer to decide the issue after more substantial briefing by the parties. See, e.g., Lindstrom v. W.J. Bauman Assoc., Ltd., 2006 WL 278858, at *6 (W.D. Wis. 2006) (finding that the court did not need to consider

undeveloped arguments).  Therefore, the Motion to Dismiss on this basis is denied.  Defendant is granted leave, however, to raise the issue again in a Motion for Summary Judgment.

C.     Count IV States a Claim for Money Damages Under the Rehabilitation Act

Defendant seeks dismissal of Count IV on two grounds.  First, Defendant argues Plaintiff's Complaint does not set forth sufficient facts to reflect the deliberate indifference required to justify monetary damages under the Rehabilitation Act.  Second, Defendant argues that to the extent Plaintiff seeks monetary damages pursuant to § 1983, such claim is barred by the Eleventh Amendment because § 1983 "does not provide a federal forum for litigants to receive a monetary remedy against a State for alleged deprivations of civil liberties."  Def. Mem., pp. 10-11.

The heading of Count IV reflects that it is also brought pursuant to the Rehabilitation Act and § 1983.  However, the prayer for relief only seeks money damages under the Rehabilitation Act and Plaintiff's response to the Motion to Dismiss states that Plaintiff seeks money damages pursuant to the Rehabilitation Act.  Therefore, it does not

appear that Count IV is brought pursuant to § 1983.  In any event,

Defendant's Eleventh Amendment argument is well-taken because

compensatory damages pursuant to § 1983 are not available against

Defendant in her official capacity.  <u>See</u>, <u>e.g.</u>, <u>Brown v. Budz</u>, 398 F.3d

904, 918 (7th Cir. 2005) ("To the extent that Brown seeks monetary

damages from defendants acting in their official capacity, those claims . .

. are dismissed as they are barred by the Eleventh Amendment.")  To the

extent Plaintiff seeks money damages pursuant to § 1983, that portion of

Count IV is dismissed.

    This Court now turns to Defendant's first argument–that Plaintiff

fails to sufficiently allege deliberate indifference.  Although the Seventh

Circuit has not decided the issue, several courts in this Circuit (and

courts in other Circuits) have held that compensatory damages are

available under the Rehabilitation Act only if the plaintiff shows

discriminatory intent–meaning that the defendant acted with deliberate

indifference.  <u>See</u> <u>Zachary M.</u>,  829 F. Supp. 2d at 662 (granting

summary judgment in favor of defendants where no evidence supported

the inference that the school district was deliberately indifferent); see also

Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999)

("[I]ntentional discrimination can be inferred from a defendant's

deliberate indifference to the strong likelihood that pursuit of its

questioned policies will likely result in a violation of federally protected

rights"); Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir.

2001). To show deliberate indifference, a plaintiff must show knowledge

(i.e. notice that an accommodation is required) and deliberate conduct

(as opposed to mere negligence). Kennington v. Carter, 2004 WL

2137652, at *7 (S.D. Ind. 2004) (ADA case).

Defendant argues Plaintiff has not alleged deliberate indifference

because J.T. has been given services, just not the level of services J.T.

wants. Plaintiff responds that she has sufficiently alleged deliberate

indifference. The Court agrees with Plaintiff.

Plaintiff alleges that Defendant is aware that many children with

severe mental illnesses and emotional disturbances are unable to obtain

medically necessary home and community based services. Cmplt. ¶¶ 6-9

(referencing DHS reports purportedly regarding children not receiving community services).  Plaintiff further alleges that Defendant established a system of requiring J.T. to be institutionalized/hospitalized to receive services for his behavioral or emotional disorders.  Cmplt. ¶ 130. Plaintiff also alleges that Defendant relies heavily on hospitalizations despite "the demonstrated advantages of community-based programs." Cmplt. ¶ 132.  This Court finds that Plaintiff has sufficiently alleged deliberate indifference.

## VI. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss Counts II, III, and IV of the Complaint (d/e 10) is GRANTED IN PART and DENIED IN PART.  To the extent Plaintiff seeks monetary damages in Count IV pursuant to § 1983, such claim is DISMISSED but Count IV pursuant to the Rehabilitation Act remains.  The Motion to Dismiss Counts II and III is also denied.  Defendant shall file an Amended Answer on or before October 22, 2012.

ENTER: October 4, 2012

FOR THE COURT:

_____s/ Sue E. Myerscough_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
